FILED

UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ALABAMA
SOUTHERN DIVISION

97 SEP 29 AM 9:42

U.S. DISTRICT COURT
N.D. OF ALABAMA

WILLIAM EDGE, HUGH M. HOOD, }
and WILMA S. HILL, }
                                     }
    Plaintiffs,             }
                                     }     CASE NO. CV 96-B-2341-S
v.                             }
                                     }
BLOCKBUSTER VIDEO, INC., et }
al.,                            }
    Defendants.

ENTERED
SEP 29 1997

### MEMORANDUM OPINION

Currently before the court is the plaintiffs' Motion to Remand the case to state court. The case was removed to this court on the basis of federal diversity jurisdiction, and plaintiffs contend that the amount in controversy requirement for federal diversity jurisdiction has not been met and that diversity jurisdiction, therefore, is not proper. Defendants counter that the amount in controversy requirement has been met in this case because the aggregation of the value of the injunctive relief sought far exceeds the amount in controversy requirement under the statute. Upon consideration of the record, the submissions of the parties, the argument of counsel, and the relevant law, the court is of the opinion that the amount in controversy requirement has been met and that the motion to remand is due to be denied.

### BACKGROUND

The instant case was originally filed in the Circuit Court for Jefferson County, Alabama. Two days after the complaint was filed, the Circuit Court for Jefferson County, Alabama granted conditional certification of a nationwide class of plaintiffs in an *ex parte* hearing prior to any

defendant being served with a summons and the complaint. Soon thereafter, defendants removed this action to this court on the basis of this court's diversity jurisdiction.

The essence of plaintiffs' claim is that defendant Blockbuster Video, Inc. ("Blockbuster")[1] has been overcharging its customers in the form of late fees. The basis for this assertion is that the cost of renting a standard video from Blockbuster is approximately three dollars for two full nights while the late fee is two dollars per day. Thus, if a video rented on Tuesday that is due to be returned by midnight on Thursday were returned on time, the total cost to the customer would be roughly three dollars. On the other hand, if the video were returned on Friday, an additional two dollar charge would be added. If the video were returned on Saturday (an additional two full nights), then the total late fee would be four dollars and the total cost would be seven dollars. If the video were returned on Thursday and then re-rented, however, the total cost would be six dollars rather than the seven charged because of late fees. The plaintiffs claim that this extra dollar in late fees is an overcharge for which they are entitled to relief.[2] Plaintiffs assert that the putative class consists of at least one million people, (Compl. ¶ 4), and plaintiffs claim that Blockbuster has overcharged these customers a total of approximately $3,200,000,000.00 since January 1, 1994. (Compl. ¶¶ 3, 19).

Plaintiffs seek relief in a variety of forms. Count I asserts a claim for breach of contract, essentially alleging that the contracts between the individual plaintiffs and Blockbuster do not

---

[1] The complaint names Blockbuster Video, Inc., Viacom, Inc. and a number of fictitious parties as defendants in this action. Fictitious parties are not relevant to removal and remand. The court will refer to the defendants collectively as "Blockbuster" or "defendants."

[2] Plaintiffs state their claim slightly differently, but this explanation gives the essence of their complaint.

2

authorize Blockbuster to charge a higher rate per day as a late fee. In the alternative, Count I seeks to have the late fee declared a penalty and held, therefore, to be void as a matter of law. In Count II, plaintiffs seek restitution for the overcharges for late fees and defendants' resulting unjust enrichment. In both Count I and Count II, plaintiffs also request relief in the form of an injunction against defendants to prevent them from continuing to charge an excessive late fee. Specifically, the plaintiffs allege:

> The Defendants have refused to or will refuse to cease and desist from charging members of the class an amount in excess of the agreed upon rental viewing fee for rental of "standard rental" videos returned after the expiration of the initial viewing period, in violation of the written contract and/or applicable law . . . making it appropriate that the Defendants be enjoined from doing so with respect to the class as a whole as alleged above.

(Compl. ¶ 15).

At present, Blockbuster has approximately 61 million accounts across the United States. (Barrett Aff. ¶ 8).[3] Of those accounts, over 48 million have been active since January 1, 1994. (Id.). Almost 29 million of those active accounts have incurred an "extended viewing fee," and slightly less than 20 million of those accounts have not. (Id. ¶ 9).

## DISCUSSION

Under 28 U.S.C. § 1441 a case may be removed to federal district court by the defendant or defendants in the action if the district court has original jurisdiction over the action. 28 U.S.C.

---

[3] Scott Barrett is the president of the domestic division of Blockbuster Videos, Inc. His Affidavit was attached to defendants' Memorandum in Opposition to Plaintiffs' Motion to Remand as Exhibit D. The Affidavit was not formally filed with the Clerk. The court's general rule is that memoranda in support of and in opposition to motions are not filed with the Clerk. In this instance, the court will direct that both plaintiffs' and defendants' memoranda and any exhibits attached thereto, be made part of the record.

§ 1441(a). Original jurisdiction may be based on a federal question or diversity. A federal court has diversity jurisdiction over an action if the action is between citizens of different states and the amount in controversy exceeds $50,000, exclusive of interest and costs.[4] 28 U.S.C. § 1332 (1994). Additionally, if removal is premised upon diversity jurisdiction, none of the defendants in the action may be citizens of the forum state for the action to be removable. Finally, in a case in which the value of the relief sought is unspecified, a defendant must prove by a preponderance of the evidence that the amount in controversy exceeds the jurisdictional amount. *See Tapscott v. MS Dealer Service Corp.*, 77 F.3d 1353, 1356-57 (11th Cir. 1996).

In the present case, it is not disputed that the parties are citizens of different states. The named plaintiffs are citizens of Alabama and the defendants are not.[5] Plaintiffs' challenge to the court's jurisdiction is based on the amount in controversy. Plaintiffs assert that each plaintiff's claim must exceed the $50,000 threshold to meet the amount in controversy requirement. Defendants contend that the court should consider the value of the injunctive relief sought in order to determine whether or not the amount in controversy requirement is satisfied.

The individual compensatory damages claims of plaintiffs in a class action may not be aggregated for the purpose of determining diversity jurisdiction. *See Zahn v. International Paper Co.*, 414 U.S. 291 (1973); *Snyder v. Harris*, 394 U.S. 332, 336 (1969). Rather, the claims of

---

[4] Effective January 17, 1997, the amount in controversy must exceed $75,000 for a federal district court to have diversity jurisdiction. *See* Federal Courts Improvement Act of 1996, Pub. L. No. 104-317, § 205, 110 Stat. 3847, 3850 (codified as amended at 28 U.S.C. § 1332 (1997)). Because this action was filed and removed prior to this effective date, the amount in controversy minimum applicable to this case remains $50,000.

[5] In determining removability, the citizenship of fictitious parties is not to be considered. 28 U.S.C. § 1441(a).

each plaintiff must meet the amount in controversy requirement for a court to have diversity jurisdiction over that plaintiff. *Zahn*, 414 U.S. at 300. The Eleventh Circuit has held, however, that punitive damages available under Alabama law may be aggregated for purposes of satisfying the amount in controversy requirement for federal diversity jurisdiction. *See Tapscott*, 77 F.3d at 1358-59. Plaintiffs' complaint specifically limits each individual compensatory award to $1,500.00 per plaintiff. Furthermore, the complaint does not include any claim for punitive damages. The complaint does, however, seek an injunction to prohibit the defendants from continuing to charge "excessive" late fees against the members of the class. The issue before the court, therefore, is whether or not the aggregate value of a claim for injunctive relief should be considered in determining the amount in controversy.

The value of the requested injunctive relief far exceeds $50,000 in the aggregate. In the present case, the value of the injunction, if granted, would be the cost to defendants of complying with the injunction.[6] As the Supreme Court stated: "In actions seeking declaratory or injunctive relief, it is well established that the amount in controversy is measured by the value of the object of the litigation." *Hunt v. Washington State Apple Advert. Comm'n*, 432 U.S. 333, 347 (1977) (citations omitted); *accord Occidental Chemical Corp. v. Bullard*, 995 F.2d 1046, 1047 (11th Cir. 1993). In the case at bar, the value of the "object of the litigation" is the value of the revenue that would be lost by Blockbuster in the event that an injunction were granted that would prohibit the charging of late fees in excess of the initial rental fee. *See Hunt*, 432 U.S. at 347 (the object of

---

[6] Here, the cost to the defendants is also the benefit to the plaintiffs. In other words, the revenue lost by Blockbuster would be money that stayed in the pockets of its customers. Thus, the value of granting or denying the injunction is the same.

the litigation is the right to sell apples in North Carolina without the strictures of the North Carolina statute, and the value of that right is "measured by the losses that will follow from the statute's enforcement"). Scott Barrett, the president of the domestic division of Blockbuster Videos, Inc., estimated that Blockbuster's annual loss of revenue from the proposed injunction, if granted, would be from $65,000,000 to $100,000,000. (Barrett Aff. ¶ 6).

The value of the proposed injunction would not exceed the $50,000 threshold if not considered in the aggregate. The complaint states that the potential class consists of one million or more plaintiffs. The high end of the estimated loss from the injunction is $100,000,000 per year. Thus, assuming only one million plaintiffs, the highest value of the injunction per plaintiff would be $100 per year. Obviously, no plaintiff will live the 500 years necessary to reach the $50,000 threshold, and the jurisdictional amount would not be reached if the value of the requested injunction must be divided by the number of plaintiffs.[2]

Defendants contend, however, that the value of the injunction does exceed the $50,000 threshold because it should be taken in the aggregate. The defendants have demonstrated by a preponderance of the evidence that the aggregate value of the injunctive relief sought by the plaintiffs far exceeds the $50,000 threshold applicable under 28 U.S.C. § 1332. The question is whether the value of the injunction should be considered in the aggregate. The court is of the opinion that it should.

---

[2] Defendants argue that the court should measure the amount in controversy by looking at either the cost to the defendants or the value to the plaintiffs. The court is not required to address this argument however, because the court concludes that the injunctive relief sought by plaintiffs can be aggregated to satisfy the jurisdictional amount.

6

The starting point in the court's inquiry is the Supreme Court's decisions in *Harris* and *Zahn*. In both of those cases, the Court reiterated the "traditional judicial interpretation . . . that the separate and distinct claims of two or more plaintiffs cannot be aggregated in order to satisfy the jurisdictional amount requirement." *Harris*, 394 U.S. at 335; *accord Zahn*, 414 U.S. at 294-95. This rule is also applicable to class actions. The Supreme Court has held that class actions under Federal Rule of Civil Procedure 23 "involving plaintiffs with separate and distinct claims" are subject to the traditional rule "that a federal district court can assume jurisdiction over only those plaintiffs presenting claims exceeding" the statutory threshold. *Zahn*, 414 U.S. at 299; *accord Harris*, 394 U.S. at 335-36. Aggregation is permitted, however, "in cases in which two or more plaintiffs unite to enforce a single title or right in which they have a common and undivided interest." *Harris*, 394 U.S. at 335.

Thus, aggregation is not permitted where the plaintiffs have separate and distinct claims. On the other hand, aggregation is permitted where the plaintiffs in a class have a "common and undivided interest" in enforcing some right. The Eleventh Circuit grappled with this distinction in *Tapscott v. MS Dealer Service Corp.*, 77 F.3d 1353 (11th Cir. 1996), and held that in some situations punitive damages available under Alabama law should be aggregated in determining the amount in controversy for diversity jurisdiction purposes. *Id.* at 1359. On the basis of *Tapscott*, the court is of the opinion that the requested injunctive relief in the case at bar should be aggregated in determining the amount in controversy.[8]

---

[8] The court is aware that is has held otherwise in the past, but those decisions were made prior to the Eleventh Circuit's decision in *Tapscott*. *Tapscott* has established that individual claimants operating as a class may have a common and undivided interest in one or more of the claims, and this common interest merits aggregation of relief in determining the amount in

7

*Tapscott* held that even where a class action involves "separate individual contract claims between the parties and not a single wrong by [defendant], such as a mass tort," punitive damages may nonetheless be aggregated to determine the amount in controversy.[2] *Id.* at 1358-59. The court was careful to note that its holding was "not to be taken to establish a bright line rule that any class claim for punitive damages may be aggregated." *Id.* at 1359. Rather, aggregation should be determined on a case by case basis. The court's holding suggests that the proper focus of that determination is on the nature of the relief sought. *See id.* at 1358.

In analyzing the nature of punitive damages in Alabama, the *Tapscott* court began by noting that the purpose for punitive damages in Alabama is to "deter wrongful conduct and punish those responsible." *Id.* at 1358. The court also noted that in Alabama, "punitive damages are awarded for the public benefit--the collective good," *id.*, and "[a]n injured party is not entitled to punitive damages as a matter of right." *Id.* Furthermore, recognizing that any punitive damage award in the case would be made on the basis of the defendant's conduct as a whole, the court stated:

> In such an instance, where the wrong to the individual is small but the course of conduct is large, the potential punitive damages would be to punish and deter the

---

controversy. Thus, the court is of the opinion that under the facts of the instant case, aggregation is appropriate.

[2] Plaintiffs' reply brief alleges that the defendants "disingenuously stated [in their brief] that *Tapscott* 'specifically found that *injunctive relief* can be aggregated.'" (Plaintiff's Reply Brief to Defendant's Brief in Opposition to Plaintiff's Motion to Remand at 4-5). (Emphasis added). Plaintiffs' assertion misrepresents defendants' argument. Defendants did not state that *Tapscott* specifically held that *injunctive relief* could be aggregated. Rather, defendants correctly argued that the Eleventh Circuit held in *Tapscott* "that *punitive damages* in a class action lawsuit can be aggregated as to the entire class in order to satisfy the required jurisdictional amount." (Defs.' Mem. in Opposition to Pls.' Motion to Remand at 9). (Emphasis added).

>course of conduct as a whole. When punitive damages reflect the defendant's course of conduct towards all of the putative class members, it is entirely proper that the damages be considered in the aggregate.

*Id.* at 1359. The court held that "the punitive damages sought in this case are a single collective right in which the putative class has a common and undivided interest; the failure of one plaintiff's claim will increase the share of the successful plaintiffs." *Id.* The court stated further: "[The defendant] is not concerned with the particular distribution of the punitive damages among the plaintiffs, but with the overall size of any such award." *Id.* In a footnote, the court went on to say:

>How the remedy is to be distributed has been considered important in determining whether an interest is common and undivided. Remedies for the benefit of the group rather than vindication of individual rights are considered a common interest. Courts look to whether the defendant has an interest in how the remedy is distributed among the plaintiffs, or whether the failure of one class member's claim will increase the others' shares. If a defendant is disinterested in how a potential remedy is distributed among plaintiffs or whether the failure of one plaintiff's claim increases the shares of the others, the plaintiffs are considered to have a common interest in the award.

*Id.* at 1359 n.14 (citations omitted). As a final note, the court relied in part on a decision from the Fifth Circuit, *Allen v. R&H Oil & Gas Co.*, 63 F.3d 1326 (5th Cir. 1995). In that case, the Fifth Circuit concluded that "each plaintiff had 'an undivided claim for the full amount of the alleged punitive damages,' and therefore 'the amount of such an alleged award [must be] counted against each plaintiff's required jurisdictional amount.'" *Tapscott*, 77 F.3d at 1358 (alteration in original) (citing *Allen* 63 F.3d at 1329, 1335) (citation omitted). The Eleventh Circuit did not reach this specific conclusion, however, in holding that punitive damages should be aggregated in *Tapscott*.

9

Thus, from *Tapscott* may be gleaned a number of factors relevant to determining whether or not a claim made by a class is "separate and distinct" or "common and undivided." First, the fact that the case involves individual contract claims rather than a mass tort claim is not dispositive. Second, the court looked to whether or not the relief seeks to deter wrongful conduct and punish those responsible for it. Third, the court noted that punitive damages in Alabama are awarded for the "collective good" and that an injured party does not have a **right** to punitive damages. Fourth, aggregation was justified, in part, by the fact that although the wrong to any individual was small, the award would be based on the defendant's course of conduct as a whole. Finally, the last two factors examined by the court were whether or not the defendant is disinterested in how the remedy is distributed among the plaintiffs or "whether the failure of one plaintiff's claim increases the shares of the others."

Applying the factors outlined above, the court is of the opinion that the present action's proposed injunctive relief is a common and undivided interest of the plaintiff class. The effect of the injunction as to any individual plaintiff would be small (one or two dollars per late videotape), but the course of conduct by Blockbuster is large.[10] Further, the effect of the injunction would be to deter (or prohibit) the course of conduct as a whole. In the present case, the plaintiffs seek an injunction prohibiting Blockbuster from charging late fees in excess of the fee charged for the initial rental period. The complaint seeks this relief on behalf of the "class

---

[10] As Mr. Barrett noted in his affidavit, Blockbuster's revenue from late fees in 1995 was $280 million, and revenue from late fees in 1996 was expected to reach $330 million. (Barrett Aff. ¶ 6).

10

as a whole."[11]  If certified, this class would consist of almost 29 million plaintiffs. (*See* Barrett Aff. ¶ 9).

Furthermore, Blockbuster is entirely disinterested in the distribution of the injunctive relief. As noted, Blockbuster's evidence suggests that the potential class is close to 29 million customers. As Blockbuster's president of its domestic division stated, "it would be administratively impossible to comply with an injunction by distinguishing between class members and non-class members." (Barrett Aff. ¶ 11). Thus, if an injunction were imposed, the defendants would be indifferent as to whether the actual class consisted of 29 million or 15 million or 40 million. The value of the "object of the litigation" would remain between $65 and $100 million per year, and the effect of the injunction would be the same--Blockbuster would not charge any customer (class member or not) a late fee in excess of the initial rental rate.

To the extent an injunction would be justified by Blockbuster's actions, it would deter a course of conduct as a whole and would inure to the "public benefit--the collective good." Blockbuster does not distinguish between customers; it charges every customer the same increased late fees. Substituting "injunction" into the language from *Tapscott*, "[w]hen [an injunction] reflect[s] the defendant's course of conduct towards all of the putative class members, it is entirely proper that the damages be considered in the aggregate." *See Tapscott*, 77 F.3d at 1359. Unlike

---

[11]  In three separate places in the complaint, the plaintiffs specify that injunctive relief is appropriate. First, the complaint states that the defendants refusal to discontinue their practice of charging increased late fees makes it "appropriate that the Defendants be enjoined from doing so with respect to the class as a whole . . . ." (Compl. ¶ 15). Second, under Count I the plaintiffs demand that the court enjoin the defendants from charging "members of the class" an increased late fee. (Compl. ¶ 19(a)). Finally, under Count II the complaint demands that the court enjoin defendants from charging "Plaintiffs and members of Plaintiffs' class" an increased late fee.

contract damages, where one plaintiff's recovery does not necessitate another's recovery, to the extent that one plaintiff is entitled to injunctive relief, all plaintiffs are entitled to injunctive relief. Thus, the relief sought is common and undivided as to the class as a whole.

Furthermore, just as with punitive damages, plaintiffs are not entitled to an injunction as a matter of right. An injunction is an equitable remedy that is issued at the discretion of the court. The fact that no plaintiff has an individual right to an injunction (unlike damages for breach of contract) enhances the collective nature of the proposed injunctive relief. The injunction would be for the benefit of the class and not for the benefit of any one plaintiff. Thus, aggregation of the value of the injunctive relief is proper, and the jurisdictional amount in controversy requirement of 28 U.S.C. § 1332 is satisfied.

Plaintiffs argue that because each class member could seek money damages and an injunction on his or her own, the interests of the plaintiffs in an injunction are separate and distinct. In *Tapscott*, however, each putative class member could have sought punitive damages on his or her own, but the Eleventh Circuit held that those damages were properly aggregated, nonetheless. Thus, plaintiffs argument is without merit.

Plaintiffs also place significant reliance on *Snow v. Ford Motor Co.*, 561 F.2d 787 (9th Cir. 1977). *Snow* was decided prior to *Tapscott* and in the Ninth Circuit and is distinguishable from the case at bar. In *Snow*, the Ninth Circuit held that the value of injunctive relief could not be aggregated in determining the amount in controversy. 561 F.2d at 790. *Snow* was a class action involving Ford's sale of "trailer packages" to members of the class. The essence of the complaint was that, contrary to representations in Ford's advertisements, the packages did not contain wiring kits for connecting the electrical systems of trailer and tow vehicle. *Id*. at 788.

The actual damages sought by each member of the class was $11.00. The class also sought injunctive relief and $5 million in punitive damages. The district court denied the plaintiffs' motion to remand on the basis that the value of the injunction sought satisfied the amount in controversy requirement for diversity jurisdiction. The Ninth Circuit reversed the denial of the motion to remand.

In reversing the district court, the Ninth Circuit relied on *Snyder* and *Zahn* and held that the value of the injunctive relief should not have been aggregated because the claims were separate and distinct. *Id.* at 789-90. In doing so, the court rejected the "defendant's point of view" and the "total detriment" approaches that have been used by some courts. *Id.* at 788-90. The court stated: "[W]here 'the equitable relief sought is but a means through which the individual claims may be satisfied, the ban on aggregation [applies] with equal force to the equitable as well as the monetary relief.'" *Id.* at 790 (second alteration in original) (quoting *Barton Chem. Corp. v. Avis Rent A Car Sys., Inc.*, 402 F. Supp. 1195, 1198 (N.D. Ill. 1975)). The injunction sought by plaintiffs would have prevented Ford from selling the trailer packages without wiring kits in the future. *Id.* at 788. Thus, according to the Ninth Circuit, the right at issue was the right of "individual future consumers" to be protected from the allegedly deceptive advertising which would supposedly injure them in the amount of $11.00. *Id.* at 790-91. The $11.00 was far below the jurisdictional minimum.

In *Snow*, an injunction was sought to protect Ford's future customers in general rather than only members of the class. Presumably, to the extent that Ford's advertising for the trailer packages was deceptive, the members of the class would not be deceived twice by the same advertisements. Thus, the injunction was primarily designed to protect non class members.

13

Protecting future customers in general was a common and undivided interest of the class. No class member had any greater interest than another in protecting future customers, and the injunction was not designed to provide any individual relief to the class. Furthermore, Ford would have been indifferent to the distribution of the injunctive relief sought to the class. Ford would not have cared if the class were 5,000 strong or 10,000 strong. The injunction would either be granted, prohibiting Ford from selling the trailer packages without wiring kits to all future customers, or it would not be granted. Thus, if *Snow* were to be decided in the Eleventh Circuit in the aftermath of *Tapscott*, the court is of the opinion that the opposite result would be reached.

Finally, *Snow* was decided almost twenty years ago by the Ninth Circuit. Since that decision, the Eleventh Circuit has decided *Tapscott*, which calls into doubt the result reached in *Snow*, at least as far as courts within the Eleventh Circuit are concerned. Thus, although the facts of *Snow* are somewhat analogous to the facts in the case at bar, the court declines to follow the reasoning of *Snow*.

Plaintiffs also cite *Packard v. Provident Nat'l Bank*, 994 F.2d 1039 (3rd Cir.), *cert. denied*, 510 U.S. 964 (1993), as additional support for their position. *Packard*, however, does not support the plaintiff's position because it is distinguishable on its facts. In that case, the court held that the injunctive relief sought would not be considered because "virtually all the relief sought is remediable by money damages." *Id*. at 1050. The only "truly equitable" relief sought by the plaintiffs was an order requiring the bank to "provide adequate notice of its sweep fees to trust beneficiaries and to tie future sweep fees to the cost of providing the service." *Id*.

14

Furthermore, no evidence was presented regarding the potential cost to the bank of complying with such an order. The court held that it would not consider the defendant's cost in an action "seeking primarily monetary damages," but it also held that it could not consider the defendant's cost because there was no evidence of that cost. *Id.*

*Tapscott* held that punitive damages would not always be properly aggregated, and the same is true for injunctive relief. The fact that the injunctive relief in *Packard* was not aggregated does not mean that it should not be aggregated here. In fact, *Packard* is distinguishable from the case at bar for two reasons. First, in the present action, injunctive relief is a significant portion of the remedy sought by the plaintiffs. Second, defendants have presented substantial evidence of Blockbuster's annual cost of complying with the injunction, if granted. Thus, the instant case is not an action where "virtually all the relief sought is remediable by money damages," and the court can consider the cost to the defendants because there is evidence of that cost.

Plaintiffs also rely on *Shelly v. Southern Bell Tel. & Tel. Co.*, 873 F. Supp. 613 (M.D. Ala. 1995). *Shelly* was decided prior to the Eleventh Circuit's decision in *Tapscott*. This court has concluded that the reasoning behind *Tapscott* calls for the aggregation of injunctive relief in the present case.

The court's conclusion is supported by the decision in *Earnest v. General Motors Corp.*, 923 F. Supp. 1469 (N.D. Ala. 1996). In that case, the plaintiffs brought a class action alleging that General Motors ("GM") had "designed and installed defective engines and/or engine control modules in various models of General Motors automobiles." *Id.* at 1470. The plaintiffs sought compensatory and punitive damages and injunctive relief, but specifically limited the monetary damages to $50,000 per plaintiff. *Id.* at 1471. The district court denied the plaintiffs' motion to

15

remand on two separate theories. First, relying on *Tapscott*, the court concluded that the value of the punitive damages was due to be aggregated and, therefore, satisfied the amount in controversy requirement for diversity jurisdiction. *Id.* at 1471-72. Second, the district court concluded that because the class as a whole had a common and undivided interest in the equitable relief sought, the jurisdictional amount could be satisfied by the collective value of the potential injunctive relief.[12] *Id.* at 1472.

The requested equitable relief was in the form of "an advertising campaign, comprehensive vehicle recall, and an injunction forbidding the defendants from using the allegedly defective engines and/or engine control modules." *Id.* at 1473. The court held that this equitable relief would "benefit the class as a whole and not just any individual plaintiff." *Id.* at 1472. Therefore, according to the court, each plaintiff had a "common interest" in the equitable relief, and aggregation was appropriate. *Id.* Finally, because the "object of the litigation" was the cost of compliance with the injunction by the defendant, the value of the injunctive relief was measured by that cost of compliance. *Id.* Thus, *Earnest* lends additional support for the court's conclusion in the instant case.

Finally, the policy behind the idea of diversity jurisdiction is furthered by the holding that the court reaches today. An action identical to the one at bar had been pending in Alabama state court in Mobile County for approximately two years prior to the filing of the complaint in this case. *See Warren v. Blockbuster Video, Inc.*, Civil Action No. 94-004092. The plaintiffs in the

---

[12] Plaintiff mischaracterizes the portion of *Earnest* relating to equitable relief as "dicta." (Plaintiff's Reply Brief to Defendant's Brief in Opposition to Plaintiff's Motion to Remand at 5.) That portion of the opinion was, in fact, the alternative holding of the court. Furthermore, the court's conclusion was not "without explanation," as alleged in plaintiff's reply brief.

16

*Warren* action are represented by the same counsel as represent the plaintiffs in the present action, and Blockbuster is represented by the same counsel in both actions, as well.[13] Despite the fact that *Warren* had been pending in Mobile County for two years, the plaintiffs in the case at bar filed suit in Jefferson County and received an almost immediate *ex parte* conditional class certification. While this maneuver by the plaintiffs is apparently legal under Alabama law, it represents a low point in forum shopping and manipulation of the justice system.

## CONCLUSION

Based on the foregoing, the court is of the opinion that diversity jurisdiction exists in the present action. Because the value of the injunctive relief sought by plaintiffs may be aggregated in determining the amount in controversy, the amount in controversy for diversity jurisdiction has been met. As the parties are diverse and the amount in controversy has been satisfied, the court has diversity jurisdiction over the present action. Therefore, plaintiffs motion to remand is due to be denied. An Order in accordance with this Memorandum Opinion will be entered contemporaneously herewith.

**DONE** this 29th of September, 1997.

*Sharon Lovelace Blackburn*
**SHARON LOVELACE BLACKBURN**
United States District Judge

---

[13] Defendants contend that the plaintiffs filed suit in Jefferson County because the court in *Warren* had reached conclusions and entered orders unfavorable to the plaintiffs.